**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                                          Case No. 3:05-cr-159-J-32HTS

RONALD ROBERTS EVANS, SR. and
JEQUITA DUMBAR EVANS

_____

**ORDER[1]**

This case is before the Court on defendant Ronald Robert Evans, Sr.'s Motion In Limine to Admit Result of Polygraph Test. (Doc. 453). The government filed a response in opposition. (Doc. 496). On August 2, 2006, the undersigned entered an Order deferring ruling on this motion pending the August 10, 2006 hearing, during which the Court heard evidence concerning whether the polygraph results were admissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and, if admissible, whether the results should be excluded under Rule 403, Federal Rules of Evidence. The testimony and evidence received during the Daubert and Rule 403 hearing is hereby incorporated into this Order.

On July 5, 2006, retired Federal Bureau of Investigation ("FBI") Special Agent Ron Grenier administered a polygraph examination to defendant, Ronald Robert Evans, Sr. ("Evans"). Mr. Evans' counsel, William M. Kent, requested the polygraph.

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

Mr. Grenier administered it to Evans at Mr. Kent's office using a modified control question technique (which was explained on the record during the August 10 hearing). The government was not present during the examination. Ultimately, Mr. Grenier asked the following series of questions to Evans and received the denoted answers:

1. Did you ever buy crack cocaine to be sold to the laborers at your labor camps?  Answer: No.

2. Did you ever direct anyone to buy crack cocaine to be sold to the laborers at your labor camps?  Answer: No.

From the charts and data generated from these answers, Mr. Grenier concluded that Evans' responses (i.e., the physiological responses charted) to question one were not indicative of deception, and his responses to question two were inconclusive.

Based on the finding for question two, Mr. Grenier asked the following two questions in an attempt to further isolate question two:

1. Did you ever direct anyone to buy crack cocaine to be sold to the laborers?  Answer: No.

2. Did you ever direct anyone to buy crack cocaine to be sold to the laborers in Palatka, Florida?  Answer: No.

From the charts and data generated from this series of questions, Mr. Grenier determined that the responses provided were not indicative of deception. He rendered a report dated July 7, 2006.  (Defs' Ex. "1").

Evans asserts that polygraph evidence is sufficiently reliable scientific evidence under Daubert, satisfies the definition of relevant evidence under Fed.R.Evid. 401 and that, under Fed.R.Evid. 403, its probative value is not substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury. The government posits that polygraph evidence fails under a Daubert analysis, and, even if admissible under Daubert, the polygraph administered in this case should be excluded under Fed.R.Evid. 403.

In the Eleventh Circuit, the use of polygraph evidence is restricted to two contexts: (1) a district court may admit polygraph evidence when the parties stipulate in advance as to the test's circumstances and scope of admissibility; or (2) to impeach or corroborate the testimony of a witness at trial. United States v. Piccinonna, 885 F.2d 1529, 1536 (11th Cir. 1989) (en banc). This, however, does not limit the trial court's discretion to exclude polygraph evidence on other grounds under the Federal Rules of Evidence. Id. Thus, even if a party seeks to introduce polygraph evidence consistent with Piccinonna, the evidence must also satisfy Rule 702 and Daubert. United States v. Henderson, 409 F.3d 1293, 1302 (11th Cir. 2005), cert. denied, --- U.S. ---, 126 S.Ct. 1331 (2006).

In Daubert, the Supreme Court set out a two-prong analysis for determining whether expert scientific evidence or testimony is admissible under Fed.R.Evid. 702: (1) whether the evidence constitutes scientific knowledge; and (2) whether the evidence is relevant. 509 U.S. at 589-91. The factors pertinent to the determination of whether a technique constitutes scientific knowledge include: (1) whether the technique has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential error rate; (4) the existence and

maintenance of standards controlling the technique's operation; and (5) whether the technique has gained general acceptance in the scientific community. Id. at 593-94; Henderson, 409 F.3d at 1302.

During the evidentiary hearing, the cross examination of Mr. Grenier and the written declaration (Govt's Ex. "1") and testimony of the government's expert, Robert Melnick[2], established that due to their nature, the error rate (i.e., the number of false positives and false negatives) for polygraph tests is unknown. Thus, the validity and reliability of polygraph results are uncertain. The evidence further showed that another significant problem with the reliability of polygraph evidence is the subjective element involved in interpreting the results of a given test. In addition, the inherent validity and reliability problems with polygraph evidence render it difficult, if not impossible, to subject it to meaningful peer review. Finally, because of these concerns, polygraph evidence has yet to obtain general acceptance within the scientific community for anything other than use as an investigative tool. See Henderson, 409 F.3d at 1302-03; United States v. Duque, 176 F.R.D. 691, 694 (N.D. Ga. 1998).

Moreover, even assuming arguendo that the polygraph evidence generally is admissible under Daubert, the evidence elicited at the hearing would cause this Court to exclude this particular polygraph under Fed.R.Evid. 403. The scope of the

---

[2] Mr. Melnick is currently a Supervisory Special Agent (SSA) of the FBI's Polygraph Unit, and is assigned as the Regional Polygraph Program Manager for the Southeastern United States.

examination administered to Evans was extremely limited when viewed in conjunction with the crimes charged in the fourth superseding indictment. As the government points out, the questions posed relate only to the first two counts (continuing criminal enterprise and a conspiracy to distribute crack cocaine) of the fifty-eight count indictment, which, in toto, charges a panoply of other offenses. (Doc. 497). Because of the discrete and dubious nature of the questions as they relate to the allegations in the case, I find that any probative value attendant to the polygraph evidence is substantially outweighed by the danger that it could confuse or mislead the jury inasmuch as the jury could easily conclude that "passing" the polygraph test has more significance than is justified. See United States v. Gilliard, 133 F.3d 809, 815-16 (11th Cir. 1998). Moreover, substantial trial time and resources would be unnecessarily consumed with a "mini-trial" over the polygraph evidence, its reliability and its meaning. Thus, defendant's motion is due to be denied.

Accordingly, it is hereby **ORDERED**:

Defendant Ronald Robert Evans, Sr.'s Motion In Limine to Admit Result of Polygraph Test (Doc. 453) is **DENIED.**

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of August, 2006.

_____
TIMOTHY J. CORRIGAN
United States District Judge

t
Copies: Counsel of Record