**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.  Case No. 3:05-cr-159-J-32MCR

RONALD ROBERT EVANS, SR.

### O R D E R

This case is before the Court on Defendant Ronald Robert Evans, Sr.'s Motion for Sentence Reduction Under Amendment 782, (Doc. 1115), to which the Government has filed a response in opposition, (Doc. 1119), and Defendant has filed a reply, (Doc. 1122). On April 30, 2018, the Court held a hearing on the motion, the record of which is incorporated herein. (Doc. 1126).

At sentencing, the Government bears the burden of establishing drug quantity by a preponderance of the evidence where such quantity impacts a defendant's Guidelines. United States v. Barsoum, 763 F.3d 1321, 1333 (11th Cir. 2014). However, a defendant bears the burden of proving that he is entitled to a sentence reduction under an applicable Guidelines' amendment. United States v. Hamilton, 715 F.3d 328, 341 (11th Cir. 2013). The problem in this case is that the Government did not prove by a preponderance of the evidence at sentencing that the drug weight was 8.4 kilograms or more, but Defendant has failed to prove that it is less than this amount. The Eleventh Circuit has

determined that in such a situation the defendant is not entitled to relief. Hamilton, 715 F.3d at 340–41 ("If . . . after looking at the record and materials that were before it at the time of the original sentence hearing, the district court cannot determine [the defendant's] drug quantity with enough specificity to decide whether Amendment 750 lowers his guidelines range, then [the defendant] is ineligible for § 3582(c)(2) relief.").

## I. BACKGROUND

In 2007, following a jury trial, the Court sentenced Defendant to 360 months imprisonment on Count One of the Fourth Superseding Indictment based on a drug quantity of at least 1.5 kilograms of cocaine base. (Doc. 704). At that time, a finding of 1.5 kilograms or more of cocaine base yielded a base offense level of 38.[1] On appeal, the Eleventh Circuit affirmed the conviction but remanded "for the limited purpose of resentencing" Defendant "in light of United States v. Kimbrough. . . ." United States v. Evans, 276 F. App'x 926, 927 (11th Cir. 2008). [2]

---

[1] Violations of 21 U.S.C. § 848, for which Defendant was convicted, have an offense level equal to the greater of four plus the base offense level for the underlying offense or thirty-eight. U.S.S.G. § 2D1.5 (2018). Thus, Defendant's base offense level increased to 42.

[2] After Defendant's initial sentencing, the Supreme Court held in Kimbrough that district courts could consider the sentencing disparity associated with the 100:1 cocaine to crack ratio in effect at the time. Kimbrough v. United States, 552 U.S. 85, 110 (2007).

In the meantime, Defendant also filed a Motion Under 18 U.S.C. § 3582(c)(2) to Modify or Reduce Term of Imprisonment Pursuant to U.S.S.G. § 1B1.10(c) Amendment 706 Effective March 3, 2008. (Doc. 1008). The Court denied the motion for reduction, agreeing with the Government that the drug quantity involved exceeded the new threshold of 4.5 kilograms—making a sentence reduction under Amendment 706 unavailable to Defendant. (Doc. 1039). However, pursuant to the Eleventh Circuit's remand to reconsider the sentence under Kimbrough, the Court reduced Defendant's sentence to 293 months as to Count One. (Doc. 1039).

**II. DISCUSSION**

Now before the Court is Defendant's motion for reduction under Amendment 782, which asks the Court to rely on its prior ruling that the drug quantity was 4.5 kilograms and resentence Defendant to 240 months—the statutory minimum. (Doc. 1115). The current Guidelines set a base offense level of 36 for certain drug offenses with a cocaine base quantity of at least 8.4 kilograms but less than 25.2 kilograms; and a base offense level of 34 for a cocaine base quantity of at least 2.8 kilograms but less than 8.4 kilograms. U.S.S.G. § 2D1.1(c) (2018). The Government opposes the request and argues that, having previously found the applicable drug quantity to be 4.5 kilograms or more of cocaine base, the Court either explicitly or implicitly found that "the United States proved approximately 10.53 kilograms of cocaine base." (Doc.

3

1119 at 1). The parties, and the Court, agree that Defendant is at least eligible for a one-month reduction because he is responsible for less than 25.2 kilograms of cocaine base. (Doc. 1119 at 2). Thus, the central issue is whether Defendant is responsible for less than 8.4 kilograms of crack cocaine—which would make his base offense level 34 (for a total offense level of 38) and could potentially result in a fifty-three month sentence reduction.

Under Hamilton, the Court must first look to the "drug quantity findings it made, either explicitly or implicitly," at the original sentencing hearing. Id. at 340. If such "finding is not specific enough to support any conclusion about whether [the applicable] Amendment . . . lower[s] [Defendant's] base offense level,"—i.e. no more specific than "at least 1.5 kilograms"—the court shall examine the entire record and materials before it at the time of the original sentencing hearing to see if it can determine a more specific drug quantity. Id. If, after examining the entire record before the Court at the original sentencing hearing, it "cannot determine [Defendant's] drug quantity with enough specificity to decide whether Amendment [782] lowers his guidelines range, then [Defendant] is ineligible for § 3582(c)(2) relief." Id. at 340–41.

In the first sentence reduction motion in 2009, the Court, at the urging of the Government, made an evidentiary finding that the drug quantity was 4.5 kilograms or more. (Doc. 1039). While the Government adverted to a 10.53 kilogram amount at the original sentencing in 2007, the Court never adopted

that weight. Thus, the Court rejects the Government's position that, having previously found the applicable drug quantity to be 4.5 kilograms or more, the Court either explicitly or implicitly found that "the United States proved approximately 10.53 kilograms of cocaine base." (Doc. 1119 at 1).

Contrary to Defendant's argument, neither did the Court find him responsible for 4.5 kilograms of cocaine base. (Doc. 1115 at 6). The two quantity findings the Court has made in this case are "more than 1.5 kilograms," (Doc. 808 at 45), and "more than 4.5 kilograms," (Doc. 1056 at 14–17). Under <u>Hamilton</u>, "more than 4.5 kilograms" is not the same as 4.5 kilograms. 718 F.3d at 340 (stating a finding of "at least 1.5 kilograms" is not specific enough to support a determination of whether a reduction amendment applies). Accordingly, the Court must review the entire record and materials available to it at the time of the original sentencing hearing to try to determine a drug quantity attributable to Defendant. <u>Hamilton</u>, 715 F.3d at 340.

At the original sentencing in 2007, the Government recounted evidence from trial that demonstrated that the drug quantity attributable to Defendant was well in excess of 1.5 kilograms. Sentencing Tr., Doc. 808 at 40. Specifically, the Government relied on Special Agent Torelli's trial testimony about records the Defendant and his employees kept during the criminal enterprise. <u>Id.</u> at 40. The records spanned five years, but were incomplete. <u>Id.</u> at 42. Using the records, the Government made a "conservative" estimate that Defendant was

responsible for an average of 17 grams of crack cocaine per week. Id. at 40. Additionally, the Government referenced trial testimony stating Defendant had maintained the same business model since the early 1990s. Id. at 40. Based on this evidence, the Government "using very conservative assumptions" found that over a fifteen-year period Defendant was responsible for at least 10.53 kilograms.[3] Id. at 40, 42.

Although the Court agreed that the amount far exceeded 1.5 kilograms, it refused to accept the Government's invitation that the evidence was sufficient to support a finding of 10.53 kilograms. Id. at 44–45. Expressing concerns about the Government's so-called "extrapolation" method for determining drug quantity, the Court stated:

> I might have more concern if the . . . cutoff, so to speak, under the guidelines was closer.
> That is, for example, . . . I think the officer estimated just over 10.53 kilograms of cocaine base. If the guidelines cutoff was ten kilograms or nine kilograms and I was having to extrapolat[e] out to find over a multiyear period how many small pieces of cocaine ended up aggregating to turn into this number of kilograms, that might give me some pause for concern as to how wholly accurate we could be or how precise we could be.

---

[3] Defendant had sold small quantities of crack cocaine, called Bells. At the time of Defendant's arrest, the Government seized 148 Bells that had an average weight of 0.45 grams. Using Defendant's own ledgers, the Government estimated that Defendant had sold roughly 378 Bells a week, which is how it arrived at 17 grams a week. Sentencing Tr., Doc. 808 at 40. The PSR, attempting to make its estimate conservative, reduced the average to 300 Bells a week, or 13.5 grams. PSR, Doc. 1109 ¶ 79. The PSR used the "conservative" estimate of 13.5 grams a week and multiplied that by 52 weeks a year for 15 years, which equals 10.53 kilograms. PSR, Doc. 1109 ¶ 79.

> But given that the cutoff is 1.5 kilograms and by these conservative estimates of the evidence we're up into the ten kilogram, and maybe beyond if it was not so conservatively done, the margin for error, so to speak, is much, much greater.

Id. Now, the Court is being asked to "extrapolate" the drug quantity for a much "closer" "guidelines cutoff." Id.

"When calculating drug quantities, if the amount seized does not reflect the entirety of the offense, the sentencing court must find the total drug quantity by estimating. . . . The sentencing court may base its calculation on evidence showing the average frequency and amount of a defendant's drug sales over a given time period" Barsoum, 763 F.3d at 1333 (citing United States v. Frazier, 89 F.3d 1501, 1506 (11th Cir. 1996)). "The calculation may be based on 'fair, accurate, and conservative estimates,' but not on mere speculation." Id. (quoting United States v. Almedina, 686 F.3d 1312, 1316 (11th Cir. 2012)).

Here, the Court is asked to use an average frequency and quantity from five years' worth of incomplete drug sale records and extrapolate estimated amounts over the entire fifteen-year enterprise. The most similar case the Court could find is United States v. Young, 39 F.3d 1561, 1572 (11th Cir. 1994), in which the Eleventh Circuit upheld the district court's use of two months of a drug transaction ledger to extrapolate the drug quantity over a four-year conspiracy. Id. However, the district court in Young also relied upon "[t]estimony by several government witnesses [that] established that the

7

[defendants'] drug business was continuous over a span of four years, and that the volume of sales remained consistent and substantial during th[at] time." Id. It is this second portion of testimony that is lacking here. Although the Government argues that there was testimony that Defendant used the same business model from the early 1990s until 2005, Sentencing Tr., Doc. 808 at 40, 42, the Government has failed to show by a preponderance of the evidence that the crack cocaine distribution occurred at the same scale for that entire period. Cf. Young, 39 F.3d at 1572.

Although the evidence at trial supported a drug quantity determination of more than 4.5 kilograms, the Court is not convinced that the Government's method of proving drug quantity is sufficiently "fair and accurate" to cover the entire fifteen years. Barsoum, 763 F.3d at 1333. And just because the Government's estimate, in its view, is "conservative" does not relieve it of the requirement that the estimate be based on reliable evidence. United States v. Butler, 41 F.3d 1435, 1447 (11th Cir. 1995); see also United States v. Culps, 300 F.3d 1069, 1079 (9th Cir. 2002) (compiling cases that hold that government cannot rely on a conservative number in the absence of reliable evidence to support it).

For example, the PSR "conservatively" estimated that Defendant was responsible for 13.5 grams of crack cocaine a week. PSR, Doc. 1109 ¶ 79. If Defendant sold that amount every week beginning in June of 1993 (a period of

8

twelve years), he would be responsible for more than 8.4 kilograms.[4] But if he only sold that amount beginning in January of 1994 (11.5 years), he would be responsible for 8.07 kilograms.[5] Additionally, the Court does not know if Defendant's crack cocaine sales in the early 1990s were significantly lower from when he was arrested, and slowly increased over time, which would make using 13.5 grams a week for 15 years over-inclusive. Moreover, Defendant was arrested on June 5, 2005, so testimony that he maintained the same business model since the early 1990s does not equate to fifteen years. Simply put, the farther back the Government attempts to "extrapolate" the drug quantity, the less reliable and accurate and more speculative the estimate becomes.

If the question was: Has the government proved a drug quantity of 8.4 kilograms or more, the answer would be no. But, under <u>Hamilton</u> it is Defendant who bears the burden of establishing that the drug quantity attributable to him was <u>less</u> than 8.4 kilograms. 715 F.3d at 341 ("As the § 3582(c)(2) movant, Hamilton bears the burden of showing that if Amendment 750 had been in effect at the time of his original sentencing, then he would have received a lower guidelines range. If Hamilton cannot make that showing, then the court does not have the authority to reduce Hamilton's sentence under

---

[4] 13.5 grams x 52 weeks x 12 years = 8.424 kilograms
[5] 13.5 grams x 52 weeks x 11.5 years = 8.073 kilograms

§ 3582(c)(2)."). As Defendant's only argument concerning drug quantity was that the Court previously found Defendant responsible for 4.5 kilograms—which ignores the Court's finding of "more than 4.5 kilograms"—he has failed to carry his burden. As such, the Court cannot determine the drug quantity with enough specificity to decide whether Amendment 782 lowers Defendant's base offense level to 34. See Hamilton, 715 F.3d at 341. Thus, Defendant's base offense level is 36 (total offense level of 40) and he is only eligible for a one-month reduction under Amendment 782. The Court, in its discretion and based on a review of the § 3553(a) factors, determines that a one-month sentence reduction is appropriate.

The Court considered whether it could distinguish Hamilton on the ground that Amendment 782 applies to Defendant; it is just a matter of who should bear the burden of proving whether Defendant is eligible for a reduction of one month or fifty-three months. In such a situation, absent proof by the preponderance of the evidence that the higher range applies, the sentencing court might "err on the side of caution." United States v. Battle, 706 F.3d 1313, 1320 (10th Cir. 2013) ("Battle was responsible for somewhere between 1.8 and 3.4 kilograms, but given the complete absence of evidence of drug quantity within that range, the district court was required to 'err on the side of caution.'" (quoting United States v. Higgins, 282 F.3d 1261, 1280 (10th Cir. 2002))). But

the Court determined that this interpretation of Hamilton, while plausible, would have to be made by the Eleventh Circuit in the first instance.[6]

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion for Sentence Reduction Under Amendment 782 (Doc. 1115) is **GRANTED in part and DENIED in part**.

2. Defendant's sentence for Count One is reduced to **two hundred and ninety-two (292) months**. The sentence on Count One will continue to run concurrently with the sentences imposed on Counts Three through Fifty-Eight, for a total term of imprisonment of **two hundred and ninety-two (292) months**. All other terms and conditions of Defendant's Amended Judgment, (Doc. 1040), remain in full force and effect.

---

[6] Although the Court is bound to follow Hamilton, some courts have ruled that it remains the Government's burden to prove a drug quantity by a preponderance of the evidence even in the context of a sentence reduction motion. Compare United States v. Sprague, 135 F.3d 1301, 1307 (9th Cir. 1998) (holding that once the defendant establishes an Amendment is applicable to his offense, "the burden of proof shifts to the government to establish the base offense level, that is, the weight of the controlled substance."), and United States v. Jenkins, No. 2:08-CR-67-DBH-01, 2015 WL 4496351, at *4 (D. Me. July 23, 2015) (stating that the burden is on the government to prove the drug quantity applicable to the defendant), with United States v. Benson, 715 F.3d 705, 708 (8th Cir. 2013) ("[I]t is not the government's burden—some sixteen years after the case was closed—to prove a substance-by-substance breakdown of the total drug quantity found by the court in 1997 . . . ."), and Hamilton, 715 F.3d at 341.

**DONE AND ORDERED** in Jacksonville, Florida this 22nd day of April, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies:

Frank Merrill Talbot, II, AUSA
Juliann Welch, Esq.
U.S. Probation
U.S. Pretrial Services
U.S. Marshals Service
Defendant